# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE AMERICAN WATERWAYS OPERATORS, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW WHEELER, Administrator of the U.S. Environmental Protection Agency, <br><br> and <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Defendants. <br><br> and <br><br> STATE OF WASHINGTON, DEPARTMENT OF ECOLOGY; and WASHINGTON ENVIRONMENTAL COUNCIL, PUGET SOUNDKEEPER, and FRIENDS OF THE EARTH, <br><br> Defendant-Intervenors. | Case No. 18-cv-02933 (APM) |

## MEMORANDUM OPINION AND ORDER

### I.

The Clean Water Act provides that a state may apply to the U.S. Environmental Protection Agency ("EPA") to prohibit the discharge of marine vessel sewage into some or all of its waters if the state determines that those waters require greater environmental protection than otherwise afforded by EPA's regulations. 33 U.S.C. § 1322(f)(3). Upon receipt of a state's application, EPA has 90 days to determine whether "adequate facilities for the safe and sanitary removal and

treatment of sewage from all vessels are reasonably available for such water[s] to which such prohibition would apply." *Id.* So long as EPA determines that adequate facilities are "reasonably available," the state may proceed to implement a no-discharge zone that "completely prohibit[s] the discharge" of sewage from any vessel into the subject waters. *Id.*

This case involves a no-discharge zone for the Puget Sound, which the State of Washington has deemed to be a "national treasure and a unique resource." Wash. Rev. Code § 90.71.200(1)(a). After four years of extensive study and public outreach, the State determined that the Puget Sound required greater protections than what EPA's vessel discharge standards provide, and in 2016, it petitioned EPA for a determination that adequate pump-out facilities were reasonably available. *See* Washington State Department of Ecology, Final Petition to Designate the Waters of Puget Sound as a No Discharge Zone (2016), ECF No. 14-8 [hereinafter "Ecology Final Petition"], at iv; Washington State Department of Ecology Prohibition of Discharges of Vessel Sewage; Receipt of Petition and Preliminary Affirmative Determination, 81 Fed. Reg. 78,141, 78,141–42 (Nov. 7, 2016). EPA issued a determination in February 2017 that adequate pump-out facilities were reasonably available, giving the State of Washington the green light to "finalize its proposed designation . . . and take the steps it deems appropriate to implement and enforce the discharge prohibition." Washington State Department of Ecology Prohibition of Discharges of Vessel Sewage; Final Affirmative Determination, 82 Fed. Reg. 11,218, 11,218–19 (Feb. 21, 2017). In making its "reasonably available" finding, EPA rejected commenters' arguments that it should take into account compliance costs for vessels, reasoning that "neither the Clean Water Act nor EPA's implementing regulations contemplate or require that EPA consider" such costs, and that, in any event, "commenters have not provided sufficient information for EPA to evaluate the overall

2

impacts or implications of such costs." *See* Resp. to Comments at 4–5 (Jan. 19, 2017).[1]  The State of Washington proceeded to establish a no-discharge zone prohibiting marine vessels from discharging any sewage into the Puget Sound.  *See* Wash. Admin. Code § 173-228-010 *et seq.* (effective May 10, 2018).

In December 2018, the American Waterways Operators—a national trade association for the tugboat, towboat, and barge industry—sued EPA, alleging, among other things, that the agency erred in determining that adequate pump-out facilities are "reasonably available," without considering compliance costs.  Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 47, 56.  The Washington State Department of Ecology and a group of conservation groups (collectively "Environmental Intervenors") intervened to defend EPA's determination.

EPA has now filed a motion asking the court to remand (but not vacate) the challenged determination so that "it can consider costs in the underlying analysis" and "decide[] whether to revise or to leave in place the challenged action in light of this analysis."  EPA's Mot. for Remand Without Vacatur, ECF No. 25 [hereinafter EPA's Mot.], at 1.  Plaintiff supports EPA's remand request but argues that the court should also vacate the underlying decision.  *See generally* Pl.'s Resp. to EPA's Mot. and Cross-Mot. for Remand with Vacatur, ECF No. 26 [hereinafter Pl.'s Cross-Mot.].  The Environmental Intervenors oppose remand and vacatur.  *See generally* Def.-Intervenor State of Washington, Dep't of Ecology's Resp. in Opp'n to EPA's Mot., ECF. No. 28 [hereinafter Ecology Intervenor's Br.]; Def.-Intervenors' Mem. of P. & A. in Opp'n to EPA's Mot. for Voluntary Remand, ECF No. 29 [hereinafter Conservation Intervenors' Br.].

For the reasons that follow, the court denies EPA's motion for remand and Plaintiff's cross-motion for vacatur.

---

[1] Available at https://www.epa.gov/sites/production/files/2017-02/documents/puget-sound-ndz-response-to-comments-01192017.pdf.

II.

A "voluntary remand request made in response to a party's APA challenge may be granted only when the agency intends to take further action with respect to the original agency decision on review." *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017). Once that threshold requirement is satisfied, a court has "broad discretion to grant or deny an agency's motion to remand." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). Courts commonly grant such requests when the "motion is made in response to 'intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation.'" *Id.* (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001)); *see also Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (granting remand to "allow the agency to consider . . . new evidence and make a new decision"). In those cases, "[a] remand is generally required if the intervening event may affect the validity of the agency action." *SKF USA*, 254 F.3d at 1028.

"[E]ven if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." *Util. Solid Waste*, 901 F.3d at 436 (quoting *SKF USA*, 254 F.3d at 1029). Before granting such a motion, however, the reviewing court must "consider whether remand would unduly prejudice the non-moving party" and whether "the agency's request appears to be frivolous or made in bad faith." *Id.*; *see also Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (declining agency's "novel, last second motion to remand" where the Commission had "not confessed error," its request was premised on a prospective policy statement that did "not bind the [agency] to a result in any particular case," and it was not apparent how the policy statement would affect the plaintiff).

4

III.

EPA asks this court to remand its decision that adequate pump-out facilities in the Puget Sound were reasonably available because, "[h]aving reviewed the complaint, the Act, judicial precedent, and the record, [EPA] now believes that it should have considered compliance costs in making the challenged determination." EPA's Mot. 4. EPA reads the Supreme Court's decision in *Michigan v. EPA*, 135 S. Ct. 2699 (2015), to mean that when a statute uses an "expansive" term like "reasonably available," "the agency is expected to consider all the relevant factors, which usually includes costs." Reply in Supp. of EPA's Remand Mot. and Resp. to Pl.'s Cross-Mot. for Vacatur, ECF No. 32 [hereinafter EPA's Reply], at 3–4 (internal quotation marks and citations omitted). "[B]ecause the Clean Water Act does not bar the consideration of costs," the agency concludes, "costs should have been one of those factors." *Id.* at 4. On remand, EPA proposes to "develop a national guidance that incorporates costs into its 'reasonably available' determinations, before applying that approach to Puget Sound." *Id.* at 7. "Developing a general cost approach first," EPA explains, will allow the agency "to fully consider the range of cost issues at the national level and use that approach in its determinations for both Puget Sound and elsewhere around the country." *Id.* at 7. It expects the entire process to take at least 12 months. *Id.* at 8.

EPA's proposal is notable for what it does not say. For one, the agency admits no error. *See id.* at 2 (arguing that an "[a]gency need not confess error or impropriety to seek voluntary remand"). EPA does not assert that the Clean Water Act requires the agency to weigh costs. Rather, it says that the Act cannot "be read to prohibit EPA from doing so." *Id.* at 3. Nor does it say that *Michigan* compels it to consider costs; it merely "believes that under *Michigan* . . . it should have considered costs," and it "would like to address that issue now." *Id.* at 1–2. Nor

does EPA identify any intervening legal or factual developments that support remand. *Michigan* was decided two years before EPA issued its decision, and the agency was fully aware of commenter's concerns regarding the costs of compliance with the Puget Sound no-discharge zone. *See* Resp. to Comments at 4–5. The only "new" thing before EPA is Plaintiff's Complaint, but EPA has identified nothing in that document that it was unaware of when it issued its decision in 2017. *Cf.* Compl. ¶ 47 (describing Plaintiff's comments about costs that it submitted to EPA during the notice-and-comment period).

It appears, instead, that EPA would simply like a second bite at the apple. "It is enough," EPA says, "to simply 'profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge." EPA's Reply at 2–3 (quoting *Limnia*, 857 F.3d at 387. EPA misreads the D.C. Circuit's caselaw. An agency's professed intent to revisit the challenged decision is a necessary condition to obtain remand, *see Limnia*, 857 F.3d at 387, but it is not always a sufficient condition. Rather, when an agency requests remand to "reconsider its previous position" and "there are no intervening events," the court must "consider whether remand would unduly prejudice the non-moving party" and whether "the agency's request appears to be frivolous or made in bad faith." *Util. Solid Waste*, 901 F.3d at 436 (cleaned up). The reviewing court has considerable "discretion over whether" to grant a remand request in this instance. *SKF USA*, 254 F.3d at 1029.

Here, the court declines to exercise its discretion to grant EPA's remand request because doing so would unduly prejudice the Environmental Intervenors' interests. The State of Washington chose to implement a no-discharge zone in the Puget Sound after four years of study and public outreach, which culminated in its conclusion that sewage discharge from marine vessels constituted a serious threat to public health and the environment in the Puget Sound, and

6

that the benefits of the regulation outweighed the costs. Ecology Final Petition at iv, 8–9. It has been almost three years since EPA issued its determination that adequate pump-out facilities were reasonably available, and the State of Washington has since instituted a no-discharge zone for the entire Puget Sound in reliance on that determination. *See* Wash. Admin. Code § 173-228-010 *et. seq*.

Granting EPA's remand request would leave all this in limbo. While EPA stresses that it has not predetermined the outcome of its costs analysis, EPA's Reply at 5–6, the court cannot blind itself to the possibility that EPA could reach a different decision on remand. Indeed, as EPA candidly admits, "[t]aking a different approach is precisely why agencies often seek remand." *Id.* at 3. And if EPA were to conclude on remand that adequate pump-out facilities are not reasonably available once factoring in costs, that decision would call into question the continuing validity of Washington's no-discharge rule, potentially disrupting a years-long initiative by the State of Washington to restore and protect the Puget Sound "in a more coherent and effective manner." Wash. Rev. Code § 90.71.200 (2007). Washington initiated the Puget Sound no-discharge zone only after receiving EPA's decision authorizing the State to "finalize its proposed designation . . . and take the steps it deems appropriate to implement and enforce the discharge prohibition," 82 Fed. Reg. at 11,219—a decision the State rightfully understood to be final.

Remand might also imperil the significant environmental progress that has been made and is still anticipated in the Puget Sound. The Puget Sound no-discharge rule became effective for most boaters in May 2018, *see* Wash. Admin. Code § 173-228-050; Ecology Intervenor's Br. at 5, and Washington has already realized benefits from the regulation. For instance, in August 2018, the State announced that it was removing shellfish harvest restrictions on nearly 700 acres

7

of commercial shellfish beds around Puget Sound marinas, and it specifically identified water quality improvements attributable to the no-discharge zone as a reason for lifting the harvest restrictions. Wash. State Dep't of Health, Improved boat sewage management leads to shellfish area upgrades (Aug. 30, 2018).[2] The Environmental Intervenors have a valid interest in maintaining this progress.

A remand also will leave regulated parties uncertain as to their compliance obligations. For instance, certain vessels, including tug boats, commercial fishing vessels, and small commercial passenger vessels, do not need to come into compliance until 2023. Wash. Admin. Code 173-228-050. If the court remands EPA's decision on the agency's proposed timetable, these boat owners will experience substantial uncertainty as to whether to begin the process of coming into compliance with the no-discharge zone or wait to see if EPA reverses course. *See* Pl.'s Reply in Further Supp. of Cross-Mot. for Remand with Vacatur, ECF No. 39, at 8 (resisting EPA's proposed 12-month timeline for revisiting the determination because "significant planning, time, and cost expenditures are necessary for Plaintiff's members to comply with the" no-discharge zone).

In view of these important reliance interests, the court is simply not willing to permit EPA to reconsider an otherwise final decision based solely on its new-found desire to apply a "non-binding prospective policy statement" that costs are a relevant consideration. *Util. Solid Waste*, 901 F.3d at 436 (citing *Lutheran Church-Missouri Synod*, 141 F.3d at 349).

Furthermore, this is not a case where the agency merely overlooked an issue. *Cf. SKF USA*, 254 F.3d at 1029 (explaining that "remand to an agency is generally appropriate to correct simple errors, such as clerical errors, transcription errors, or erroneous calculations"). To the

---

[2] Available at https://www.doh.wa.gov/Newsroom/2018NewsReleases/18123ShellfishAreaUpgradeNewsRelease.

contrary, "[n]umerous commenters . . . articulated concerns over the cost to retrofit vessels in order to comply with the no-discharge zone" and "the financial burden of ongoing costs, such as paying for pumpout services and the operating costs associated with the time needed to pump out." Resp. to Comments at 4. EPA rejected those concerns, noting that the Clean Water Act does not "contemplate or require that EPA consider" these costs, and that even if it did, "commenters have not provided sufficient information for EPA to evaluate the overall impacts or implications of such costs." *Id.* at 5. EPA now asks for a second chance to "[i]nvite public comments" on those same cost concerns, without identifying any deficiencies in the original notice-and-comment process or any new developments. EPA's Reply at 7; *see also* Decl. of John T. Goodin, ECF No. 32-1, ¶ 15 (stating that the agency plans to review "the cost information [it has] available, including information that was provided in public comments on the challenged determination" and then request additional cost information "from the appropriate sources," including "Plaintiff, other vessel class associations, the state, etc."). Granting EPA's remand request to elicit more comments on costs after it considered and rejected the cost information it had the first time around would effectively allow EPA to circumvent the statutory requirement to receive comments and issue a determination "within 90 days" of receiving an application from a state. 33 U.S.C. § 1322(f)(3). The court declines this invitation.[3]

IV.

For the foregoing reasons, the court denies EPA's Motion for Remand Without Vacatur,

---

[3] Because Plaintiff's cross-motion for vacatur is contingent on the court granting remand, the court also denies that request.

ECF No. 25, and denies Plaintiff's Cross-Motion for Remand with Vacatur, ECF No. 27.

Dated: December 13, 2019

Amit P. Mehta
United States District Judge